## Case No. 16,899.

### VAUGHAN et al. v. NORTHROP.

[5 Cranch, C. C. 496.] [1]

Circuit Court. District of Columbia.  Nov. Term, 1838.[2]

FOREIGN ADMINISTRATORS—ASSETS WITHIN JURIS-DICTION—ACCOUNTING.

1. An administrator appointed in Kentucky, who has received, in the District of Columbia, money belonging to the estate of his intestate, cannot by a bill in equity be compelled to account for and distribute the same to the next of kin, citizens of, and residing in Virginia, although the administrator should be found in the District of Columbia.

2. Quære, whether a foreign administrator can be sued, as such, and held to account in the District of Columbia, for assets there received.

The bill in equity in this cause, stated that the plaintiffs, [James Moody Vaughan and others,] all of Virginia, are the lawful and only children of Catharine Moody, deceased, who intermarried with their father, and who was the only child, next of kin, and heir of James Moody, who, in 1802, died intestate in Fayette county in Kentucky; and that the plaintiffs are his only next of kin and legal heirs and distributees, and that he left no widow. That the defendant Henry Northrop, obtained letters of administration of his estate in Kentucky, and received assets more than sufficient to pay all his debts and funeral expenses, &c. and particularly, that he received, in the District of Columbia, at least $5,200 from the United States, under the act of congress of July 5, 1832 (4 St. 563), for military services of the said James Moody, in the Revolutionary War, in the naval or military service of the state of Virginia, and that the plaintiffs, by the said act of congress, are entitled to receive the same, as next of kin to the said James Moody, but the said defendant Northrop refuses to account to the plaintiffs for the same; and confederating with Benjamin Moody, and twenty-one others, defendants, (naming them,) all of Kentucky, and two of Maryland, (also naming them,) denies that the plaintiffs are, but affirms that the defendants (except Northrop) are, the next of kin of the said James Moody, and that he has accounted with them therefor, and the plaintiffs charge that the claim of the defendants is fraudulent and against conscience, and pray that an account may be taken of the personal estate of the said James Moody, which came, or ought to have come to the hands and possession of the defendant Northrop, as administrator, and of the debts, funeral expenses, &c., and that the residue, after paying all legal charges and just debts, may be ascertained and distributed among all the plaintiffs as next of kin of the said intestate. The defendant Northrop, in his answer, excepts to the jurisdiction of the

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Affirmed in 15 Pet. (40 U. S.) 1.]

court, and prays that his exception may avail him as if he had demurred to the same; and the cause was heard as upon demurrer, and argued by R. S. Coxe, for the defendant, and R. J. Brent, for the plaintiffs. Mr. Coxe, for the defendant, contended that a foreign administrator cannot be compelled to account here. Neither the laws of Kentucky, nor the laws of the District of Columbia, can be carried into effect here against a Kentucky administrator. He has given his bond to account there, and there only. The act of congress of the 24th June, 1812, § 11 (2 Stat. 755), which enables administrators appointed in the states and territories of the United States to sue here, does not oblige foreign administrators to account here; and no suit can be maintained against them here as administrators. Chancellor Kent has decided that the courts of New York cannot hold jurisdiction against a foreign executor or administrator. Morrell v. Dickey, 1 Johns Ch. 153; Doolittle v. Lewis, 7 Johns. Ch. 45; Sears v. Fenwick, 1 Cranch [5 U. S.] 259; Champlin v. Tilley, 3 Day, 303; Story, Confl. Laws, 422, §§ 513, 514.

R. J. Brent, for plaintiffs.

The administrator is liable in Kentucky, for assets received there only. He is liable to account here for assets received here. Bryan v. McGee, Coxe, Dig. 16, § 54; Id. [Case No. 2,066]; Penn v. Lord Baltimore, referred to in Carroll v. Lee, 3 Gill & J. 509; Freeman v. Fairlie, 3 Mer. 24, 45; 8 Com. Dig.; Sandilands v. Innes, 3 Sim. 263; Story, Confl. Laws, 515; Story, Eq. Jur. 505, 507; 4 Ves. 73. A trustee is liable to account wherever found. Massie v. Watts, 6 Cranch [10 U. S.] 148. The act of congress of the 27th of February, 1801 (2 Stat. 103), gives this court jurisdiction in all cases where either of the parties is found here.

Mr. Coxe, in reply.

This court has not jurisdiction of every case in which one of the parties is found here; but it is necessary to the jurisdiction of this court that one of the parties should be found here. It is a limitation, not an extension, of the jurisdiction. The India cases do not apply. Where there are bona notabilia in divers dioceses, administration must be obtained from the provincial prerogative court, but they are all under one allegiance, and one jurisdiction. Godol. 71; Trecothick v. Austin [Case No. 14,164]. The money must be remitted to Kentucky, to be administered there. Pratt v. Northam [Id. 11,376]; Harvey v. Richards [Id. 6,184].

THE COURT (nem. con.) was of opinion, that as the defendant's intestate died in Kentucky, and the defendant's letters of administration were granted in Kentucky; as the complainants resided in Virginia, and all the defendants in Kentucky, this court had not, or if it had, ought not to assume jurisdic-

tion in this case, although the administrator received the money here in 1833, and was found here in 1837.

Bill dismissed, with costs.

[Upon being taken to the supreme court on appeal, the decree of this court was affirmed, with costs. 15 Pet. (40 U. S.) 1.]

## Case No. 16,900.

VAUGHAN v. SIX HUNDRED AND THIRTY CASKS OF SHERRY WINE et al.

[7 Ben. 506.] [1]

District Court, S. D. New York. Dec., 1874.

BILL OF LADING — EXCESSIVE LEAKAGE — NEGLIGENCE—JOINDER OF ACTIONS.

1. A quantity of sherry wine was brought from Cadiz to New York, under bills of lading which contained the words "shipped in good order and well conditioned," to be "delivered in like good order and well conditioned, dangers of the seas excepted," and also the words, "weight and contents unknown, and not accountable for average leakage and breakage." The casks were delivered to consignees to whom the bills of lading had been transferred, but they refused to pay the freight. The master of the vessel filed a libel against the goods and the consignees, to recover the freight. It appeared, that when the casks were discharged, part of them were entirely empty, and others partially empty and leaking, and that the casks were "inferior and shaky" casks. No evidence was offered as to the condition of the casks when shipped. An exception was taken to the libel because it joined a cause of action in rem with one in personam: *Held*, that, as the cause of action arose out of a contract which, if the respondents were liable on it, also bound the property, and as the respondents claimed the property, there was no reason for not joining the causes of action.

[Cited in The J. F. Warner, 22 Fed. 343; The Director, 26 Fed. 711; Joice v. Canal-Boats Nos. 1758 & 1892, 32 Fed. 554; The Baracoa, 44 Fed. 103.]

2. There was no evidence to show that the casks delivered empty and partly empty were not empty and partly empty when shipped.

[Cited in Miller v. Hannibal & St. J. R. Co., 90 N. Y. 435.]

3. There was no evidence that the leakage of the casks was greater than "average."

4. To resist successfully the claim of the vessel for freight, it must be shown affirmatively that the loss resulted from negligence on her part.

[Cited in Hus v. Kempf, Case No. 6,943; The Tommy, 16 Fed. 603; The Querini Stamphalia, 19 Fed. 124.]

5. Such negligence had not been shown, and the libellant was entitled to the freight.

C. D. Adams, for libelant.

W. R. Beebe, for claimants and respondents.

BLATCHFORD, District Judge. The libellant, as master of the bark Hudson, brings this libel against a quantity of sherry wine and its consignees to recover freight and primage amounting to $866.25 in gold, for transporting said wine, 630 quarter casks, in said vessel from Cadiz to New York, in April, 1873, un-

der bills of lading which were transferred to the respondents. The bills of lading describe the goods as "quarter casks of sherry wine," and contain the words, "shipped in good order and well conditioned," so many casks of sherry wine, and the words, "to be delivered in the like good order and well conditioned," dangers of the seas excepted. On the bills of lading are stamped the words, "weight and contents unknown, and not accountable for average leakage and breakage." The libel alleges that the casks of sherry wine were "to be delivered, the dangers of the seas excepted, in like good order as they were received;" that "the said sherry wine was delivered in like good order and condition, and the same was duly received and entered by the said consignees in the custom house of the port of New York, and were ordered into the bonded warehouse, to be held for the payment of the duties thereon, where the same now are;" and that the consignees, the respondents, have not paid the $866.25.

The answer excepts to the libel, because it joins a cause of action against the property, in rem, with one against the respondents, in personam. This exception is overruled. The cause of action arises out of a contract which, if the respondents are liable on it, also binds the property, and the respondents claim the property. There is no good reason for not joining the causes of action.

The answer (which is put in by the respondents as such, and as claimants of the wine) alleges that the wine was delivered at New York in a damaged condition; that only a part of the same was delivered; that such loss and damage was not caused by any of the exceptions in the bill of lading, but from some cause which the ship was bound in law to provide against; that the damage was more than the amount of freight; that the damage ought to be recouped from the freight; and that there is nothing due to the libellant or to the vessel.

At the trial, it was admitted that the 630 casks, without reference to what was in them, were delivered from the ship at New York, and were taken to the bonded warehouse of the United States there, and there placed in the custody of the officers of the customs. A witness for the libellants testified: "I discharged the 630 casks; they were not in very good order; part of them were wholly empty; part of them were partly empty; almost all of them required coopering; they came out in very bad order; a portion of the casks were leaking; I considered them to be inferior casks; they looked like shaky casks; they were in the between decks; I looked at them in the between decks; they were leaking then in the between decks; the wine was running over the between decks." It was also shown that one of the claimants and respondents, when called upon, on behalf of the libellants, to pay the freight and primage, soon after the casks were delivered, declined to pay it, stating, as a ground of refusal, alleged damage to the cargo. No testimony was put in by the defence.

The allegation of the answer, that the wine

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]